UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| SISAY AMARE GHEBREKIDAN,<br><br>Plaintiff,<br><br>vs.<br><br>ANDREW M. SAUL, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | 4:18-CV-04159-KES<br><br><br>MEMORANDUM OPINION AND ORDER REVERSING THE DECISION OF THE COMMISSIONER |

Plaintiff, Sisay Amare Ghebrekidan, seeks review of the decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits (SSDI) under Title II of the Social Security Act, 42 U.S.C. § 423 and for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1382. Docket 17. The Commissioner opposes the motion and urges the court to affirm the denial of benefits. Docket 22. For the following reasons, the court reverses the decision of the Commissioner.

**PROCEDURAL HISTORY**

Ghebrekidan filed an application for SSDI and SSI on August 28, 2015, alleging disability since November 1, 2011. AR 116, 260-63. The Commissioner denied his claim initially on February 12, 2016, and upon reconsideration on June 23, 2016. AR 178, 190. Ghebrekidan then appeared with counsel before Administrative Law Judge (ALJ) Richard Hlaudy on November 9, 2017. *See* AR 29-60 (transcript of hearing). ALJ Hlaudy issued an opinion affirming the

denial of benefits on February 6, 2018. AR 24. The Appeals Council denied Ghebrekidan's request for review on September 27, 2018. AR 1-5. Thus, Ghebrekidan's appeal of the Commissioner's final decision is properly before the court under 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

Ghebrekidan was born on September 1, 1960, in Ethiopia. AR 34. Before immigrating to the United States, Ghebrekidan served in the Ethiopian military. *Id.* Ghebrekidan then immigrated to the United States and obtained his GED. *Id.* Ghebrekidan has held several jobs including working as a custodian, housekeeper, meat processor, and security guard. AR 36-40. None of his employment has lasted more than one and a half years. AR 126-29, 142-44, 368-74, 318. Ghebrekidan last worked in 2012. AR 273.

Ghebrekidan lives with his wife and children. AR 42. In the morning he drives his wife to work and his children to school. *Id.* He then regularly picks everyone up in the afternoon. AR 43. He sometimes can wash dishes, load the washing machine, and prepare simple meals. AR 42-44. Ghebrekidan has a history of several medical impairments including lower back pain, anxiety, blindness in one eye, and diabetes. *See* AR 291. Ghebrekidan has undergone several treatments over the years, including back injections, but Ghebrekidan continues to experience debilitating pain. *See* AR 376-440.

## ADMINISTRATIVE HEARING

During the administrative hearing, the ALJ heard testimony from Ghebrekidan, Dr. Robert S. Wenger, and a vocational expert. AR 29-60.

Ghebrekidan, represented by counsel at the hearing, testified with the assistance of an Amharic interpreter. AR 32-33. Ghebrekidan testified about his education, work experience, and his back pain during the relevant time period. AR 34-39.

Ghebrekidan first discussed his work experience. AR 36. Ghebrekidan described his previous work—including working as a security guard, helping his wife in her daycare business, cleaning offices, cleaning screens at a video production office, and working at a carwash. AR 36-40. He described his job as a security guard in 2011 as "[j]ust sitting in the car and watching." AR 36. He then described his job at Convalense Specialty Materials in 2006 as "cleanup, cleanup, cleaning." *Id.* Ghebrekidan next described his job cleaning a bank as "vacuuming." AR 37. He then described his job at Mitographers as "[c]leaning the -- washing the screen. After it I coated the screen, coating." *Id.* Finally, Ghebrekidan described his job at New City Auto Sales as washing cars. AR 38. Ghebrekidan also testified that he writes and reads English "at a low level" and often needs help filling out forms. AR 35.

Ghebrekidan then discussed his back pain history. Ghebrekidan testified that he first had back problems in April of 1999. AR 38. Ghebrekidan testified that he still has severe pain in his lower back and that the pain makes it difficult to walk. AR 41. Ghebrekidan also testified that the pain in his back affects his ability to sleep, stand, sit, and work. AR 42-45. Because of the pain, Ghebrekidan can only sit for 20 or 30 minutes before he must stand up and can only stand for five minutes before he must sit down. AR 44. He testified

3

that although he has received back injections in the past, he still experiences severe pain in his back. AR 42. Ghebrekidan also testified that he now uses a cane when he walks, and that he can only see out of one eye. AR 44-45. He noted that his pain has worsened through the years. AR 47.

David Perry served as the vocational expert (VE) at the hearing. AR 39, 56. Before posing any hypotheticals, the ALJ stated to the VE:

> It looks to me like the only two jobs are the cleaning the bank that he did for three months and the Mitrographers (sic), it sounds to me like a screen-printing job, that looks like the only past relevant work upon earnings and the amount of time on each job.

AR 39. The ALJ then asked the VE to categorize both jobs. *Id.* The VE characterized Ghebrekidan's custodial job at the bank as a "janitor," classifying it as an "unskilled" job with "medium work." *Id.* The VE characterized the job of screen printer as "semiskilled" with "light work." *Id.* Prior to asking further questions or posing hypotheticals, however, the VE's testimony was halted so Dr. Wenger could testify. AR 40.

Dr. Wenger testified that he has worked as a family medicine physician for thirty years and has served as Ghebrekidan's treating physician for more than ten years. AR 51-52. He testified that he currently treats Ghebrekidan for chronic low back pain, type 2 diabetes, enlargement of the prostate, and osteoarthritis of the knee. AR 51. Dr. Wenger testified that although he has tried different interventions and treatments, Ghebrekidan's pain has been consistent and Dr. Wenger has been unable to make a dent in Ghebrekidan's pain. AR 53. Dr. Wenger noted that there is not a lot of medication to help with low back pain other than Tylenol or Advil. *Id.* Finally, Dr. Wenger testified that

4

he believes that Ghebrekidan's lower back pain is as bad as it is described by Ghebrekidan. AR 54.

After Dr. Wenger's testimony, the VE was recalled to the witness stand. AR 56. The ALJ stated, "Dr. Perry, you had given us the past relevant work here." *Id.* The ALJ then posed a series of hypotheticals to the VE. For the first hypothetical, the ALJ asked whether an individual with similar past work history, age, and educational background as Ghebrekidan, who could stand or walk for 6 hours in an 8-hour day, sit for 6 hours, lift and carry 20 pounds occasionally, 10 pounds frequently, with occasional ramps, stairs, ladders, ropes, scaffolds, stooping, frequent kneeling, crouching, crawling, and frequent reaching in all directions bilaterally, could perform any of Ghebrekidan's past relevant jobs. *Id.* The VE stated that such an individual "would be able to do the work of screen printer . . . but not the work of the janitor. That would require lifting more than 20 pounds." *Id.* The ALJ asked if the addition of a cane for ambulation would affect the VE's answer. *Id.* The VE said that it would not. AR 57. The ALJ then asked if Ghebrekidan possessed any transferrable skills to transfer to sedentary work. *Id.* The VE testified that "none of his skills from being a screen printer would transfer to sedentary work." *Id.*

For the second hypothetical, the individual was the same as the first but stood or walked only 4 hours in an 8-hour day, and only occasionally kneeled, crouched, or crawled. *Id.* The VE testified that such an individual would be limited to sedentary work and that the past work of such an individual is at the light or medium level. *Id.* Thus, just like the first hypothetical, the VE testified

that in this scenario none of the skills would transfer to sedentary work. AR 58. Ghebrekidan's attorney then asked the VE if his opinion would change if the individual was limited in his vision. *Id.* The VE stated that he would "need to know a little more about the eye where he is able to see and what kind of distance vision problems he might have." AR 59. Ghebrekidan's attorney also asked if "the job that [the VE was] talking about" requires an individual to stand or sit. *Id.* The VE testified that the job of a screen printer is "mainly a standing job, but it does allow sitting throughout the workday." *Id.*

## ALJ DECISION

Employing the five-step analysis associated with an application for social security benefits, the ALJ denied Ghebrekidan's claim on February 6, 2018. AR 24. At step one, the ALJ found Ghebrekidan had not engaged in substantial gainful activity from his alleged onset date, May 9, 2013, through his date last insured, September 30, 2014. AR 19.[1] At step two, the ALJ determined Ghebrekidan had the following severe impairments: "degenerative joint disease, lumbar spinal stenosis, blind in left eye, and left shoulder tendonitis." *Id.*

At step three, the ALJ concluded Ghebrekidan did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* At step four, the ALJ found Ghebrekidan had the residual

---

[1] Previously Ghebrekidan filed an application for SSDI benefits in which he alleged a disability onset date of March 1, 2010. AR 16. A decision on that application was issued on May 8, 2013, finding Ghebrekidan not disabled. *Id.* Based on the previous decision, ALJ Hlaudy only considered the time period from May 9, 2013 through September 30, 2014. AR 17.

functional capacity (RFC) to perform light work with some limitations.[2] AR 20-23. The ALJ held that Ghebrekidan "was capable of performing past relevant work as a screen printer" from May 9, 2013 through Ghebrekidan's date of last insured, and that past relevant work as a screen printer "did not require the performance of work-related activities precluded by [Ghebrekidan's RFC]." AR 23. Thus, the ALJ ended his analysis at step four and concluded that Ghebrekidan was not disabled under the Social Security Act. AR 24.

## STANDARD OF REVIEW

The court must uphold the ALJ's decision if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see also Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). " 'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the conclusion.' " *Teague*, 638 F.3d at 614 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). When reviewing the record, "the court 'must consider both evidence that supports and evidence that detracts from the Commissioner's decision.' " *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007)). If the

---

[2] The ALJ found Ghebrekidan could "lift and/or carry 20 pounds occasionally, 10 pounds frequently; stand and/or walk 6 hours in an 8-hour day, and sit 6; occasionally climb ramps, stairs, ladders, ropes and scaffolds; occasionally stoop[.]" AR 20. The ALJ also found Ghebrekidan could frequently kneel, crouch, crawl, reach in all directions bilaterally, and needed to avoid concentrated exposure to workplace hazards. *Id.* The ALJ noted that Ghebrekidan "is unable to speak and understand the English language." *Id.*

7

Commissioner's decision is supported by substantial evidence in the record as a whole, the court may not reverse it merely because substantial evidence also exists in the record that would support a contrary position or because the court would have determined the case differently. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)).

The court also reviews the Commissioner's decision to determine if an error of law has been committed, which may be a procedural error, the use of an erroneous legal standard, or an incorrect application of the law. *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (citations omitted). Issues of law are reviewed de novo with deference accorded to the Commissioner's construction of the Social Security Act. *Id.* (citing *Juszczyk v. Astrue*, 542 F.3d 626, 633 (8th Cir. 2008)).

**THE FIVE STEP PROCEDURE FOR DISABILITY DETERMINATIONS**

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(3)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national

economy[.]" 42 U.S.C. § 423(d)(2)(A). An ALJ must apply a five-step procedure when determining if an applicant is disabled. *Smith v. Shalala*, 987 F.2d 1371, 1373 (8th Cir. 1993). The steps are as follows:

**Step One**: Determine whether the applicant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b).

**Step Two**: Determine whether the applicant has an impairment or a combination of impairments that are severe. 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c).

**Step Three**: Determine whether any of the severe impairments identified in Step Two match the listing in Appendix 1. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 416.920(d).

**Step Four**: Considering the applicant's RFC, determine whether the applicant can perform any past relevant work. 20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(f).

**Step Five**: Determine whether any substantial gainful activity exists in the national economy that the applicant can perform. 20 C.F.R. § 404.1520(g); 20 C.F.R. § 416.920(g).

## DISCUSSION

Ghebrekidan urges the court to reverse the ALJ's decision because the ALJ erred by finding Ghebrekidan previously worked as a "screen printer." Docket 18 at 16. Ghebrekidan argues that the ALJ's determination that Ghebrekidan could return to past relevant work as a screen printer is not supported by substantial evidence in the record. *Id.* at 16-19. The

9

Commissioner argues that the VE's classification and the ALJ's determination are supported by substantial evidence. Docket 22 at 5-7.

As an initial matter, the Commissioner argues that Ghebrekidan failed to raise the issue at the administrative hearing. *Id.* at 6-7. Ghebrekidan's counsel did fail to cross-examine the VE on the conflicting classification at the hearing. *See* AR 39-60. But this does not discharge an ALJ's duty to explore discrepancies within the record. For example, the Eighth Circuit has held that "[i]t is the [ALJ's] duty to develop the record fully and fairly even if, as in this case, the claimant is represented by counsel." *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983). And although the failure to raise an argument at the agency level "ordinarily prevent[s] [a party] from raising it in judicial proceedings," Ghebrekidan should not be penalized for the failure of the ALJ, the VE, and counsel at the hearing. *Weikert v. Sullivan*, 977 F.2d 1249, 1254 (8th Cir. 1992). And the Eighth Circuit has held that "*Weikert* . . . do[es] not establish that one's failure to present an argument to the Appeals Council, without more, creates an insuperable bar to judicial review[.]" *Harwood v. Apfel*, 186 F.3d 1039, 1043 (8th Cir. 1999). Thus, counsel's failure to cross-examine does not bar Ghebrekidan from raising the argument here.

**I.      The ALJ classification is not supported by substantial evidence.**

At step four, the ALJ evaluates whether the claimant has the RFC to perform his past relevant work. *See Cuthrell v. Astrue*, 702 F.3d 1114, 1116 (8th Cir. 2013) (citing 20 C.F.R. § 404.1520(a)(4)(iv), (f)). If the claimant can perform past relevant work, the claimant is not disabled. *Id.* Through step four,

"the claimant has the burden of showing [he] is disabled." *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Although the burden lies with the claimant, the ALJ must make "specific findings" as to the claimant's RFC, "the physical and mental demands" of past relevant work, and whether the RFC would permit a return to past work. SSR 82-62, 1982 WL 31386, at *4 (Jan. 1, 1982); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (noting that the ALJ must make "explicit findings" regarding the claimant's past work and "compare those demands" with the claimant's RFC "to determine whether [he] could perform the relevant duties.").

To ascertain the requirements of occupations as generally performed in the national economy, the ALJ may rely on VE testimony or information from the Dictionary of Occupational Titles (DOT). *See* SSR 00-4P, 2000 WL 1898704, at *2-3 (Dec. 4, 2000). And in defining a claimant's past relevant work as actually performed, the ALJ may use a properly completed vocational report and the claimant's own testimony. For example, "a properly completed SSA-33969-F6, Vocational Report, may be sufficient to furnish information about past work." SSR 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982). SSR 82-61 also notes:

> [t]here may be cases involving significant variations between a claimant's description and the description shown in the DOT. In some instances, an apparent variation may result from an incomplete or inaccurate description of past work. Employer contact or further contact with the claimant, may be necessary to resolve such a conflict.

*Id.* When a VE provides evidence at step four about the requirements of a job, the ALJ has a responsibility to ask about "any possible conflict" between that

11

evidence and the DOT. *See* SSR 00-4p, 2000 WL 1898704, at *4. Although such a conflict is not regularly contemplated by SSR 00-4P, "a plaintiff could potentially show that an ALJ's decision is not supported by substantial evidence if an ALJ relied upon a VE's erroneous classification of past work[.]" *Turner v. Comm'r of Soc. Sec.*, 2019 WL 5781608, at *6 (S.D. Ohio Nov. 5, 2019).

Here, the ALJ found Ghebrekidan capable of performing his past relevant work that was classified by the ALJ to the VE as that of a "screen printer." AR 23. The substantial evidence of the record, however, does not support that Ghebrekidan performed screen-printing functions as part of his past relevant work. The ALJ's finding appears in part to result from confusion that arose during the November 9, 2017 hearing. *See* AR 29-60. At the beginning of the hearing, Ghebrekidan was questioned about his past work, including his work at a Mitographers. AR 37. During this testimony, Ghebrekidan described jobs that sound custodial in nature: "cleanup" at Convalense Specialty Materials in 2006, cleaning and "vacuuming" at a bank, "[c]leaning the -- washing the screen" at Mitographers, and washing cars at New City Auto Sales. *See* AR 36-38. Ghebrekidan's testimony then transitions to discussing his back pain and medical history, noting that Ghebrekidan had considered having back surgery. *See* AR 38. During this line of questioning, however, the transcript abruptly cuts back to what reads like a custodial job discussion:

> CLMT: I was sent to Minneapolis, Minnesota, to do the surgery but the doctor -- the specialist suggested that I shouldn't do it because I will have more pain, so I didn't.

12

>    ATTY: Okay.
>
>    CLMT: And he told me to change to a different job.
>
>    A: The trash bags, the plastic, I pick those things.
>
>    Q: Okay. That was standing to do the job, right?
>
>    A: In between I sit down because that time I have too much pain and I'm very tough time.

AR 38-39. Based on the transcript, it is unclear which job Ghebrekidan is discussing in this exchange. What is clear, however, is Ghebrekidan described the work at Mitographers as "[c]leaning the -- washing the screen. After it I coated the screen, coating." AR 37.[3]

After Ghebrekidan's testimony, the ALJ began his examination of the VE and immediately suggested to the VE that Ghebrekidan's job at Mitographers was that of a screen printer. *See* AR 39. "It looks to me like the only two jobs are the cleaning the bank job that he did for three months and the Mitographers, it sounds to me like a screen-printing job[.]" *Id.* The VE then relayed the DOT categorizations of janitor and screen printer, with the latter being semiskilled work at the light level. *Id.* At this point of the hearing, the common features of Ghebrekidan's past work and Ghebrekidan's own description of his work at Mitographers should have prompted someone to spot the problem with the outlier screen-printing classification. But instead the VE's testimony was halted, and in the middle of the VE classification, the transcript

---

[3] The court also notes Ghebrekidan was testifying with the help of an Amharic interpreter, which potentially added to the misunderstanding. AR 32-33.

13

turns back to an examination of Ghebrekidan followed by testimony of Dr. Wenger. *See* AR 40-55. Only after Dr. Wenger's testimony was the VE recalled. *See* AR 56. Again, instead of resolving the apparent conflict, everyone, including the VE and attorneys, accepted the ALJ's previous classification of screen printer and the hypothetical portion of the hearing resumed. Thus, by the end of the hearing there remained an unresolved conflict between Ghebrekidan's description of his past work experience at Mitographers and the ALJ and the VE's classification of such.

First, the substantial evidence of the record does not support that Ghebrekidan's past work included work as a "screen printer" because Ghebrekidan's testimony contradicted this classification. As laid out above, Ghebrekidan described the work at Mitographers as "[c]leaning the -- washing the screen. After it I coated the screen, coating." AR 37. Ghebrekidan described the rest of his work history similarly, with common janitorial features. *See* AR 36-38. "The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining skill level[.]" SSR 82-62, 1982 WL 31386, at *3. But despite Ghebrekidan's description of his work history, the ALJ determined that Ghebrekidan's past relevant work included work as a "screen printer." *See* AR 39. An ALJ has affirmative duty to resolve apparent conflicts. *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1167 (9th Cir. 2008) ("[T]he ALJ always has a duty to make the requisite factual findings to support his conclusion at step four." (internal quotation omitted)). But here, the ALJ did not clarify why

14

the screen-printing classification was appropriate and had a duty to make the requisite factual findings to support his step four conclusion.

For example, in *Vertigan v. Halter*, the court found that no substantial evidence supported the ALJ's finding that the claimant's "past relevant work included work as a cashier" because the claimant's "testimony made it clear that she had never exclusively worked as a cashier." 260 F.3d 1044, 1051-52 (9th Cir. 2001). A district court reached a similar conclusion in *Albritten v. Berryhill*, where the claimant's work was not properly characterized as a hospital admitting clerk. 2018 WL 3032860, at *5-6 (C.D. Cal. June 14, 2018). The court remanded the case for further administrative proceedings to allow the ALJ to reconsider the claimant's past relevant work and "make sufficient findings regarding its classification." *Id.* at *7. And in *Self v. Colvin*, the ALJ and the VE erroneously classified a claimant's past work as a sales manager based on a series of muddled questions and answers. 2015 WL 2207832, at *7-8 (D. Colo. May 8, 2015). Similarly, the ALJ's determination here that Ghebrekidan's past relevant work included work as a "screen printer" is not supported by the transcript record.

Apart from Ghebrekidan's contradictory testimony, there is also a conflict between relevant evidence in the record and the ALJ's classification. Nowhere in the record is Ghebrekidan's past relevant work described or defined as a "screen printer." Instead, Ghebrekidan's work at Mitographers is described as a custodial or a packaging job. For example, the agency's initial February 12,

15

2016 Disability Determination Explanation (DDE) describes Ghebrekidan's job at Mitographers in 2003-2004 as:

> [p]roduction work. Load printed material from printing machine and pack into boxes and move boxes when full. Occasionally had to clean or make adjustments to the printer machine. Lift 40 lbs occasionally, 25 lbs frequently. Stand constantly during 8 hr shift.

AR 129. At the ALJ hearing, the VE testified that Ghebrekidan could work as a screen printer but could not work as a janitor because "[t]hat would require lifting more than 20 pounds." AR 56. But in the initial DDE, Ghebrekidan's job at Mitographers is described as a job where Ghebrekidan would be required to lift 40 pounds occasionally and 25 pounds frequently. AR 129. The initial DDE also describes Ghebrekidan's "past relevant work" as work at a printing warehouse in 2003-2004 with DOT code "920.685-078" requiring "medium" work. AR 126. This description is in contrast with the VE's categorization of "screen printer" with DOT code "979.685-010" requiring "light" work. *Compare* AR 126 *with* AR 39.

In the reconsideration DDE, dated June 22, 2016, Ghebrekidan's past relevant work again included a printing warehouse job in 2003-2004. AR 142. This job was categorized as a "packaging" job with the same DOT code as the initial DDE. *Id.* And when examining Ghebrekidan's summary of earnings, the only jobs Ghebrekidan held during 2003 to 2004 were Mitographers (packaging), ISS Facility Services, Inc. (bank cleaning), Valentino's (restaurant cleaning), and Kelly Services, Inc. (unknown). *See* AR 271. This form again categorizes Ghebrekidan's past relevant work differently than the VE's

16

categorization. *Compare* AR 142 *with* AR 39. Ultimately, both DDEs found Ghebrekidan did not have the RFC to perform his past relevant work at Mitographers. *See* AR 127, 143.

Finally, the VE's own vocational report, dated November 4, 2017, does not include a screen-printing job when summarizing Ghebrekidan's past relevant work. *See* AR 373. Instead, the VE found Ghebrekidan's past relevant work to include his employment as a security worker, laundry worker, housekeeper, and construction worker. *Id.* And apart from the VE's own report, the record contains no evidence from treating or examining sources that evaluate or find Ghebrekidan was or is currently capable of the "skilled-type" work of a screen printer. *See Davis v. Berryhill*, 2018 WL 1461966, at *4-5 (D. Minn. Mar. 23, 2018) (finding the ALJ's determination was not supported by the record when no "Work Activity Reports" included construction or landscaping employment, and the record contained no evidence from examining sources that showed the claimant was capable of "skilled-type" work); *Carmickle*, 533 F.3d at 1166-67 (remanding the case after finding the ALJ's classification of claimant's past relevant work was not supported by substantial evidence); *Vertigan*, 260 F.3d at 1051 (finding that no substantial evidence supported past relevant work as a cashier because "vocational reports [the claimant] filled out" and the claimant's testimony made clear the claimant was "never exclusively a cashier"); *Legrand v. Astrue*, 2009 WL 801599, at *29 (E.D. Mo. Mar. 25, 2009) (finding that "incorrectly characterizing plaintiff's past relevant work in order to conclude at Step 4 of the sequential evaluation

17

process that the plaintiff could perform past work as a building contractor was an error of law."). Instead, Dr. Wenger, Ghebrekidan's treating physician, classified Ghebrekidan as "an unskilled worker." AR 7.

Thus, the transcript and record before the court, Ghebrekidan's testimony, and the evidence in the record do not support the inclusion of "screen printer" in Ghebrekidan's past relevant work. The ALJ's determination that Ghebrekidan could perform past work as a "screen printer" is not supported by substantial evidence on the record as a whole and was error.

## II. The ALJ's error was reversible error.

In some instances, the error of the ALJ can be harmless. *See Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) (finding that an ALJ's mistake of fact is harmless error when "[t]here is no indication that the ALJ would have decided differently" had the mistake not occurred). But here, the ALJ's step four error was not harmless. The ALJ found Ghebrekidan could only perform his past work as a "screen printer" and could not perform his other past work as a custodian. AR 26. Based on this conclusion, the ALJ made no step five finding, and the VE testified to no other available jobs in the national economy. *See Lamb v. Colvin*, 2014 WL 3894919, at *6 (E.D. Cal. Aug. 4, 2014) (noting that "had the ALJ proceeded to step five of the sequential disability analysis, the Court possibly could have found the step-four error to be harmless."); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) ("Although the ALJ's step four determination constitutes error, it is harmless error in light of the ALJ's alternative finding at step five."). Given the lack of relevant findings

18

after the step four error, it is unclear if the ALJ would have still found Ghebrekidan not disabled had his past relevant work been properly classified and analyzed, or what the ALJ would have found at step five. Thus, the ALJ's classification was not harmless and is grounds for reversal and remand.

## III. Remand for further proceedings is appropriate.

42 U.S.C. § 405(g) permits a district court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). "[R]emand is therefore proper whenever the district court makes a substantive ruling regarding the correctness of a decision of the Commissioner and remands the case in accordance with such a ruling." *Buckner v. Apfel*, 213 F.3d 1006, 1010 (8th Cir. 2000). Ghebrekidan requests this court reverse and remand the Commissioner's decision with an immediate award of benefits, or in the alternative, remand with further instructions. Docket 18 at 19-20. But when an ALJ errs, the court ordinarily should remand to the agency for further proceedings. *See Buckner*, 213 F.3d at 1011 (noting that a remand with an award of benefits is appropriate "only if the record 'overwhelming supports' such a finding." (quoting *Thompson v. Sullivan*, 957 F.2d 611, 614 (8th Cir. 1992))); *see also Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1105 (9th Cir. 2014) (noting that when "an ALJ makes [an] error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency."). Remand to the agency is warranted where the record evidence should be clarified and properly evaluated. *See Buckner*, 213 F.3d at 1013 (finding that

19

remand was warranted for "additional evaluation of existing evidence and for further development of the record regarding [claimant's] ability to perform past relevant work").

Here, further administrative proceedings would serve the purpose of allowing the ALJ to reconsider Ghebrekidan's past relevant work at Mitographers and make its classification. Further proceedings would also clarify the confusion from the hearing transcript. On remand, the ALJ should reevaluate the fourth and fifth step in the five-step process and develop an accurate picture of Ghebrekidan's past relevant work. Thus, "out of an abundant deference to the ALJ," remand for further administrative proceedings is appropriate here. *Id.* at 1011 (internal quotation omitted).

## CONCLUSION

The substantial evidence of the record does not support the ALJ's inclusion of "screen printer" in Ghebrekidan's past relevant work. Thus,

IT IS ORDERED that the decision of the Commissioner is REVERSED and REMANDED for further review consistent with this opinion.

Dated February 25, 2020.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE